CURTICE–BURNS, INC., Appellant,

v.

NORTHWEST SANITATION
PRODUCTS, INC., Appellee.

Patent Appeal No. 75–628.

United States Court of Customs
and Patent Appeals.

March 11, 1976.

See also Cust. & Pat. App., 530 F.2d
1400.

James M. Wetzel, Wetzel, Greenawalt & Fitzgibbon, Chicago, Ill., attys. of record, for appellant.

Alvin E. Hendricson, San Francisco, Cal. (Gregg, Hendricson & Caplan, San Francisco, Cal.), William G. MacKay, San Francisco, Cal., attys. of record, for appellee. Charles R. Allen, Jr., Arlington, Va., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office Trademark Trial and Appeal Board, 185 USPQ 61 (1975), dismissing appellant's petition to cancel appellee's registration No. 826,-533, issued March 28, 1967, of the mark BLU–BOY for "toilet bowl cleaner, freshener, and deodorizer." We affirm.

### Background

Appellant owns registration No. 811,-784, issued July 26, 1966, of the mark BLUE BOY for "carbonated soft drinks." Appellant also uses the mark on a variety of canned fruits and vegetables, as well as carbonated soft drinks, sold in the northeastern part of the United States.

The record shows that appellee has been marketing toilet bowl cleaner under its BLU–BOY mark since 1963 and its market is now nationwide.

The products of both parties are sold through retail grocery stores and supermarkets and are advertised nationally. During the ten years prior to initiation of this proceeding, appellant spent $800,-000 on advertising and had sales of $38,-000,000. Appellee spent $2,250,000 on advertising from 1964 through 1972, with sales of $13,500,000.

### The Board's Opinion

The board decided that appellee's use of BLU–BOY on toilet bowl cleaner was not likely to cause confusion or mistake because its product and appellant's canned vegetables, fruits, and soft drinks "are non-competitive, differ significantly in utility, and have nothing in common with respect to their essential characteristics, uses or sales appeal." To appellant's argument that its mark was famous and thus entitled to a broad scope of protection, the board stated that "the record falls far short of establishing that 'BLUE BOY' is in the category of famous marks. Contrariwise, respondent has expended more money in advertising its mark and there can be no doubt that nationwide its 'BLU–BOY' toilet bowl cleaner is better known than any of petitioner's food products which are sold under its mark." In reaching its decision, the board did not consider appellant's pleaded ownership of several registrations of BLUE BOY because they bore names other than appellant's, and appellant, faced with appellee's general denial, had produced no evidence of such ownership. The board discounted testimony on a single incident of actual confusion because the circumstances were "not of sufficient probative value to show why the person involved was actually confused" and because "one isolated instance of this nature is insufficient to establish actual confusion in the marketplace." As to the testimony on likelihood of confusion, the board concluded that it was mere opinion and not bind-

ing. In so concluding, the board noted that two of the four witnesses, all of whom were grocery store managers, acknowledged that they did not handle appellee's products, while the other two testified that they were not directly aware of any instance of actual confusion, and that one of the latter two witnesses testified that "there is no confusion but customers might think differently."

On reconsideration, the board adhered to its original decision and refused appellant's request to consider the validity of appellee's registration because of an aspect of its prosecution, since "this is a matter outside of the issues raised and tried by the parties."

### Appellant's Arguments

Appellant pins its substantive arguments on what it claims is a finding by the board that at least one person was actually confused by appellee's mark. Appellant states that such a finding is expressed in the following sentence of the board's opinion: "The circumstances surrounding this incident are not of sufficient probative value to show why the person involved was actually confused." Presupposing a finding of actual confusion, appellant alleges the board erred in not giving that finding effect, arguing that "a single act of confusion is confusion and nothing more is required." Appellant argues that noncompetition between the products involved, on which the board relied, "is not necessarily relevant to the determination of likelihood of confusion"; indeed, appellant would ignore product distinctions, calling its mark "famous."

As to the testimony on likelihood of confusion, appellant argues that the board erred in "arbitrarily excluding" it, stating that it "was not rebutted." Complaint is also made of the board's refusal to treat appellant as the owner of prior registrations of BLUE BOY. Appellant declares that the board must accept the statement in its registration No. 811,784 that it is "Owner of Reg. Nos. 209,904, 402,666 and 566,055," since

"Pursuant to 15 U.S.C. Section 1057(b)," the law is that statements in a registration are to be given "prima facie" effect, and appellee "offered no evidence to attack the presumption."

Finally, appellant argues that the board should have considered the issue of invalidity of appellee's registration, even though the issue was first brought up on reconsideration, because the board has a duty to consider validity whether or not raised by the parties.

### OPINION

■ Appellant is mistaken in contending that the board made a finding of actual confusion. The board specifically said that there was an "absence of credible evidence of actual confusion" and that the single incident relied on by appellant "is insufficient to establish actual confusion in the marketplace." The board was correct in so holding since the testimony offered did not indicate that the single person allegedly confused (who did *not* testify) had ever seen appellee's mark on any of its products.

■ The board was also correct in not giving binding effect to the testimony of the four grocery store managers on likelihood of confusion, even though appellant states that such testimony was undisputed. In the first place, that testimony is conflicting; one of the witnesses testified that "there is no confusion but customers might think differently." In the second place, that testimony *is* in effect disputed by the evidence of the noncompetitive nature of the products involved, a relevant factor in this case, as it is in all cases, even though it may not be dispositive. We cannot say that the board erred in finding that factor to outweigh the testimony offered by appellant; it is manifest that toilet bowl cleaner is not competitive with canned fruits or vegetables or with carbonated soft drinks. Nor does the record show that appellant's mark is any more "famous" than that of appellee, whose products enjoy a geographically larger market and on which appellee spends more for advertising.

■ We see no merit in appellant's argument that the board should have given "prima facie" effect to the statement in his registration No. 811,784 that he is the "Owner of Reg. Nos. 209,904, 402,666 and 566,055." The statute on which appellant relies, 15 U.S.C. § 1057(b), does not accord "prima facie effect" to every statement in a certificate of registration; as to ownership, it accords prima facie effect only to the statement of ownership of the mark for which the certificate is issued.

■ Finally, the board did not err when it refused appellant's request, first made on reconsideration, to consider the invalidity of appellee's registration. This issue was not pleaded, nor was it tried, although it could have been, since the documents relied on to support it are found in the file history of appellee's mark. Appellant failed to bring the matter up when it had ample opportunity to do so; it cannot be heard to complain now.

Appellant has placed some emphasis on our decision in *Hunt Foods and Industries, Inc. v. The Gerson Stewart Corp.,* 367 F.2d 431, 54 CCPA 751, 151 USPQ 350 (1966). Its first reliance thereon is to support its contention that the fact the parties' goods "are not directly competitive is not necessarily relevant to the determination of likelihood of confusion." No such statement is to be found in our *Hunt* opinion. Any fact bearing on likelihood of confusion is "relevant" to its determination. In discussing third-party registrations in *Hunt* we expressly stated that "the nature of the products covered by the third-party registrations is a factor to be considered * * *." We did say, "The fact that the goods are not of the same descriptive properties is also not *controlling* under the terms of the Trademark Act of 1946." The legal concepts of "relevance" and "control" are fundamentally disparate.

Secondly and primarily, appellant relies on *Hunt* to show that the facts here as to the parties' marks and products parallel those in *Hunt,* which is not the case, on which precedential basis we are asked to find likelihood of confusion, as we did in *Hunt.* We said in *Industrial Nucleonics Corp. v. Hinde,* 475 F.2d 1197, 177 USPQ 386 (CCPA 1973), as we shall evidently have to continue saying ad nauseam:

> As we have said innumerable times, prior decisions on other marks for other goods are of very little help one way or the other in cases of this type. Each case must be decided on its own facts and the differences are often subtle ones.

Here the differences from the *Hunt* facts are not even subtle. In *Hunt* the marks were identical, here they differ; evidence in *Hunt* showed the mark to be famous, here there is no such evidence; in *Hunt* there was evidence of a consumer survey, here there is none; and there are other differences, including some subtle ones.

Finally, what is briefed to us under the statement "this court said" is in fact a quotation (containing distorting ellipses) from the opinion of the dissenting member of the TTAB with which we expressed neither agreement nor disagreement. In quoting it (in full) in our *Hunt* opinion, we said: "*Appellant's case* is well summarized in the opinion of the dissenting board member * * *." (Emphasis ours.) There appears to be no excuse for mistaking the quotation as a statement by us. The *Hunt* opinion contains nothing persuasive of error by the TTAB herein.

*Taxation of Costs*

Appellant requests that we charge appellee with the costs of printing certain items in appellee's designation of additional parts of the record for inclusion in the printed transcript. These items are: appellee's two memoranda to the board dealing with appellant's petition for reconsideration, dated January 23, 1975, and February 14, 1975; the depositions of the four grocery store managers, McCrea, Hanover, Borreggini, and Stagnitta, dated June 15 and June 22, 1973;

the depositions of appellant's employee Gregory dated May 15, 1973, and February 12, 1974; the depositions of appellee's officers, Williamson and Hocker, dated December 20, 1973; and appellee's exhibits D and E.

■ The motion is granted only as to appellee's memoranda to the board; the May 15, 1973, deposition of appellant's employee Gregory; the depositions of appellee's officers; and appellee's exhibits D and E. The two memoranda were not necessary to an understanding of the board's disposition of appellant's petition for reconsideration. The May 15, 1973, deposition of appellant's employee Gregory, the depositions of appellee's officers, and appellee's exhibits D and E deal with marketing, advertising, and sales of the products involved, matters not in issue on this appeal.

Appellant's motion is denied with respect to the other items. The depositions of the four grocery store managers were relied on by appellant to show likelihood of confusion and the February 12, 1974, deposition of appellant's employee Gregory was relied on by appellant to show actual confusion. The board's treatment of this testimony was a significant issue on this appeal, requiring the court to refer to these depositions for its resolution. Under these circumstances, we do not feel that appellee should be assessed the cost of printing these depositions.

The decision of the board is *affirmed*.

AFFIRMED.